UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE McCARTY,

    Petitioner,

v.

                                          Case No. 1:07-cv-663
                                          Hon. Gordon J. Quist

CARMEN D. PALMER,

    Respondent.

                                                  /

**REPORT AND RECOMMENDATION**

Petitioner, Wayne McCarty, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.    Background**

The Michigan Court of Appeals summarized the underlying facts in the following sentence. "Eyewitness testimony at the trial indicated that McCarty pushed his wife out of a truck he was driving, that she appeared almost lifeless when she hit the pavement, and that he both failed to help her and tried to stop others from doing so." *People v. Wayne Roy McCarty*, No. 242792, slip op. at 1 (Mich. App. Dec. 11, 2003). A jury convicted McCarty with assault with intent to commit murder, M.C.L. § 750.83, for pushing his wife out of a moving vehicle with intent to kill her. *Id.* The trial court sentenced petitioner to a prison term of 25 to 50 years. *Id.*

Petitioner, through counsel, presented three issues on appeal:[1]

---

[1] Petitioner presented Issues I and II in his original brief and Issue III in a supplemental brief.

> I. [Petitioner] was deprived of his Ams V and XIV rights of due process when the prosecutor permitted a police officer to expose [petitioner's] prior criminal history.
>
> II. [Petitioner] was deprived of his Ams V, VI and XIV rights of due process with the victim was permitted to sit in court during the trial.
>
> III. [Petitioner] was deprived of his Ams V and XIV rights of due process when the Prosecutor introduced evidence of prior violent acts committed by him.

Brief on Appeal (docket no. 23).

The Michigan Court of Appeals affirmed petitioner's conviction. *See McCarty,* No. 242792. Petitioner did not appeal these claims to the Michigan Supreme Court.[2]

Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MCR 6.500, *et seq.*, which that court denied. *See People v. Wayne Roy McCarty*, No. 00-76564-FC (Ingham Co. Cir. Ct.) (Opinion and Order) (June 22, 2005) (docket no. 24). Petitioner, through counsel, sought leave to appeal the motion, raising seven issues:

> I. Whether fundamental rights of due process entitle [petitioner] to examine the only available witness?
>
> II. Whether [petitioner] was denied a fair trial by interference with right to present a defense?
>
> III. Whether [petitioner] was denied a fair trial by improper prosecutor argument where the prosecutor interjected personal opinions of witness credibility, denigrated defense counsel, distorted the prosecutor's burden of proof, and appealed to the jurors' sympathy and civic duty?

---

[2] Respondent cites an "Affidavit of Michigan Supreme Court Clerk, Corbin R. Davis, regarding Michigan Court of Appeals No. 242792." No such document exists in the record. However, in his amended habeas petition, McCarty states that he did not appeal the Michigan Court of Appeals decision to the Michigan Supreme Court. *See* Amended Petition at ¶ 9(g) (docket no. 3).

> IV. Whether [petitioner's] sentence was unconstitutionally entered where the facts found to raise [petitioner's] sentencing guidelines, and to raise his sentence past limits of the sentencing guidelines, were found by a judge rather than a jury?
>
> V. Whether [petitioner] was denied a fair trial by ineffective assistance of counsel at trial?
>
> VI. Whether [petitioner] was unconstitutionally prejudiced by ineffective assistance of appellate counsel?
>
> VII. Whether [petitioner's] issues should be properly heard on the merits?

Application for leave to appeal (docket no. 24). The Michigan Court of Appeals denied the application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Wayne Roy McCarty*, No. 271034 (Mich. App. Dec. 27, 2006).

Petition filed an application for leave to appeal to the Michigan Supreme Court, raising the same issues. Application for leave to appeal (docket no. 25). The Michigan Supreme Court denied petitioner's application because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Wayne Roy McCarty*, No. 133233 (Mich. June 26, 2007).

McCarty, through counsel, filed an amended petition for writ of habeas corpus, raising seven issues:

> I. Denial of Due Process by refusal to permit examination of the only available witness that could corroborate petitioner's testimony and innocence.
>
> II. Fair trial denied by interference by prosecutor with right to present a defense.
>
> III. Denial of fair trial by improper prosecutor argument.

> IV. Unconstitutional sentence based upon fact finding by the judge instead of the jury.
>
> V. Petitioner denied a fair trial by ineffective assistance of counsel.
>
> VI. Ineffective assistance of appellate counsel.
>
> VII. Petitioner's issues are properly raised and should be heard on the merits.

Amend. Petition (docket no. 3).

### II. Procedurally defaulted claims

#### A. Procedural default doctrine

Respondent contends that all of petitioner's claims have been procedurally defaulted. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a

4

procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Petitioner first raised his habeas claims in a motion for relief from judgment brought pursuant to MCR 6.500 *et seq.* Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal these claims because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). The Sixth Circuit has held that MCR 6.508(D) is a valid procedural bar for habeas purposes. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d at 407-08; *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). Consequently, a habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal. *Id.*

### 1. Petitioner's Issues I, II, III, IV and V

As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's issues I, II, III, IV, and V on the basis of the state procedural bar of MCR 6.508(D) precludes habeas review. *See Howard*, 405 F.3d at 477; *Burroughs*, 282 F.3d at 414; *Simpson*, 238 F.3d 407. Petitioner contends that these issues are not procedurally defaulted, citing *Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004). The court disagrees. In *Abela*, the appellate court determined that where a lower court addressed the merits of a defendant's motion for relief from judgment, and the Michigan Supreme Court ultimately denied application for leave to appeal citing MCR 6.508(D), it cannot be said that the Michigan Supreme Court denied the application on procedural grounds, because "[a] court may deny relief from judgment under

5

6.508(D) for the non-procedural reason that the defendant simply failed to meet his burden of 'establishing entitlement to the relief requested.'" *Abela*, 380 F.3d at 921-24. Subsequent Sixth Circuit opinions have declined to follow *Abela*, because the panel deciding that case could not overrule the panels which decided *Simpson* and *Burroughs*. *See Zimmerman v. Cason*, 354 Fed. Appx. 228, 234-35 (6th Cir. 2009). *See also McCray v. Metrish*, 232 Fed. Appx. 469, 478-80 n. 1 (6th Cir. 2007) (declining to follow *Abela* because 6th Cir. R. 206(c) states that "en banc consideration is required to overrule a published opinion of the court"). For the reasons expressed in *Zimmerman* and *McCray*, the court does not consider *Abela* as binding precedent on this issue. Accordingly, petitioner's issues I, II, III, IV and V are procedurally defaulted for purposes of federal habeas review.

### 2. Petitioner's Issue VI

Petitioner's Issue VI, which alleged ineffective assistance of appellate counsel, is not subject to procedural default. Because state collateral review under MCR 6.500 *et seq.* is the first opportunity for a criminal defendant to address the issue of ineffective assistance of appellate counsel, this issue is not subject to the procedural default doctrine. *See Whiting v. Burt*, 395 F.3d 602, 614 (6th Cir. 2005); *Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (6th Cir. 2004); *Tucker v. Renico*, 317 F.Supp.2d 766, 773 (E.D. Mich. 2004).

### 3. Petitioner's Issue VII

Petitioner's Issue VII is not a claim for habeas relief. Rather, this issue consists of an argument that the court should hear the merits of other issues "without regard to cause and prejudice" and that the "state courts were unreasonable in applying an incorrect standard of review."

*See* Amended Pet. at p. 14. This issue, which does not raise a "violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254, should be dismissed.

### B. Cause and Prejudice as to Petitioner's Issues I, II, III, IV and V

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner does not assert any cause for his procedural default of these issues. Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support

7

his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Claims of actual innocence are rarely successful because such evidence is unavailable in the vast majority of cases. *Id.* Petitioner offers no such new evidence that he is actually innocent of the crimes for which he was convicted. He has failed to meet the fundamental miscarriage of justice exception. Accordingly, petitioner's Issues I, II, III, IV and V are procedurally barred and not subject to habeas review.[3]

### III.     Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted all of the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

---

[3] To the extent that the petition can be construed as asserting ineffective assistance of appellate counsel as cause for the procedural default, this claim fails because there was no ineffective assistance of appellate counsel. *See* discussion in § IV, *infra*.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

9

### IV. Petitioner's claim for ineffective assistance of appellate counsel (Issue VI)

Petitioner's remaining claim is for ineffective assistance of appellate counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis*, 351 F.3d at 745, *citing Strickland*. It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983). On the contrary,

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52. It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981). "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Id.* "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986).

To evaluate a claim of ineffective assistance of appellate counsel, the court assesses the strength of the claim appellate counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). If there is a reasonable probability that petitioner would have prevailed on appeal had the claim been raised, then this court can consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id.* at 700. In this regard, appellate counsel cannot be found to be ineffective for failing to raise an issue that lacks merit. *Shaneberger v. Jones*, -- F.3d --, 2010 WL 2794195 at *3 (6th Cir. 2010); *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). "Furthermore, the *Strickland* analysis 'does not require an attorney to raise every non-frivolous issue on appeal.'" *Shaneberger*, 2010 WL 2794195 at *3, quoting *Caver v. Straub*, 349 F.3d 340, 348-49 (6th Cir.2003). As a practical matter, of course, this approach requires the court to address the merits the issue regardless of whether it was raised on direct appeal.

### A. Testimony of the victim

Petitioner contends that appellate counsel should have contested the prosecutor's interference with his ability to secure testimony from the victim. At the preliminary examination on November 30, 2000, Dr. Ben Bachulis testified that the victim was in "essentially a vegetative state." Prel. Exam. Trans. at p. 13 (docket no. 12). The victim did not eat, speak or talk. *Id.* At the

11

time of trial in February 2002, the victim's condition had improved to some extent. On the third day of trial, the prosecutor advised the court that the victim would attend the trial under Michigan's crime victim's rights act. Trial Trans. III at pp. 219-20 (docket no. 16). At that time, the prosecutor advised the court that the victim was fairly immobile, that "[s]he doesn't really move her head very much, but she is able to nod her head up and down and sideways a very little bit to indicate yes or no," and that the victim was not able to speak, explaining that "she can move her lips a little bit, and if you watch really closely you can kind of get an idea of what she's saying." *Id.* The prosecutor stated that the victim would appear for a few hours and then return to the nursing home. *Id.* at pp. 220-21. Defense counsel raised an objection, stating to the court that he had been advised throughout the criminal matter that "the victim was not able to communicate." *Id.* at p. 221. The prosecutor responded that while the victim could nod her head to communicate "yes" to her son, she cannot effectively communicate and "could never be found competent to be a witness." *Id.* at p. 226. The judge ruled that the victim could attend the trial under the crime victim's right act, noting that her ability to communicate was a different issue. *Id.* at pp. 227-28. When defense counsel raised the issue of the victim's ability to communicate, the court noted the absence of any evidence of such communication, stating that "[a]ll I've been told this morning by an officer of the court is that she has heard that the victim can nod her head in response to questions." *Id.* at p. 229.

On the fourth day of trial, Paul D. Minnick, M.D., identified the victim as a patient in his nursing home. Trial Trans. IV at pp. 350-51. Dr. Minnick related that the victim arrived at the nursing home comatose and had made improvements over the years. *Id.* at pp. 351-56. The doctor summarized her present condition in response to two questions by the prosecutor:

> Q. All right. Is she in a vegetative state?
>
> A. Basically, she is in a vegetative state.
>
> Q. Okay. And what exactly does that mean?
>
> A. She's not communicative. She's unable to take nutrition on her own. The only thing she's really able to do is, if asked specific questions, slightly nod her

12

> head, move her eyes. She will smile sometimes. An example, this Christmas when I was into her room there was -- they have a radio playing to stimulate her, and I turned it over to Christmas music and I saw a slight smile on the left side. But other than that, no ma'am.

*Id.* at pp. 358-59.

This record does not support petitioner's claim that the prosecutor misrepresented the victim's condition or that the victim could have been called as a witness. Based on this record, which indicates that the victim could not communicate in any meaningful way, there is not a reasonable probability that the inclusion of this issue would have changed the result of the appeal. *See McFarland*, 356 F.3d at 699. Accordingly, appellate counsel was not ineffective for failing to raise this claim. Further, petitioner fails to indicate what testimony the victim would have provided, or how it would have benefitted him, if she could have testified.

### B. Prosecutorial misconduct

Petitioner maintains that the prosecutor improperly accused him of being a liar, improperly denigrated defense counsel, improperly appealed to the jury's sympathy, and improperly appealed to the jury's civic duty. Brief at 25-35 (docket no. 1-3). The court considers the prosecutor's remarks within the context of the entire trial to determine whether any improper remarks resulted in prejudicial error. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). "Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Id.* However, prosecutors cannot offer their opinions as to credibility of a witness or the guilt of a defendant, or discuss any purported facts not introduced into evidence. *Id.* Nevertheless, even if the prosecutor's conduct was improper or even universally condemned, the court can provide federal habeas corpus relief only if the statements were so flagrant and egregious as to deny the petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). "The relevant question is whether

the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted).

"When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)). If the court finds that the prosecutor made improper remarks, it should consider four factors in determining whether the remarks are so flagrant as to rise to the level of a due process violation: (1) the likelihood that the prosecutor's remarks tended to mislead the jury or to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately placed before the jury; and (4) the total strength of the evidence against the accused. *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

Petitioner contends that during closing argument, the prosecutor accused him of being a liar. For example, the prosecutor: referred to petitioner's testimony as "basically ridiculous" and "not based on reality;" that petitioner's version of events was laughable; that petitioner denied driving the truck because he was guilty and knew it; and that petitioner had 15 months to review police reports and witness statements, which gave him "plenty of time to come up with his version of what happened." Trial Trans. at pp. 784, 789, 795 and 831. "The prosecution necessarily has wide latitude during closing argument to respond to the defense's strategies, evidence and arguments. *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (internal quotation marks omitted). In this case, the prosecution could properly comment on plaintiff's credibility as a witness. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). When a defendant takes the stand, "his credibility may be impeached and his testimony assailed like that of any other witness." *Id.*, *quoting Brown v. United States*, 356 U.S. 148, 154 (1958). *See, e.g., Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir.1988) (holding that the prosecutor's deliberate, repeated references to the defendant as a

14

"deadbeat," a "thief," a "creep" and a "liar" did not violate due process). Accordingly, the prosecutor's comments were not improper.

Petitioner also claims that the prosecutor denigrated defense counsel, by arguing that the defense could not prove its claim "that it was physically impossible for [d]efendant to commit this crime." Trial Trans. VII at pp. 783-84, 789. The prosecutor's argument was in the context of disputing petitioner's claim that he was not driving the vehicle and his theory of the case. *Id.* at p. 789. The prosecutor did not launch a personal attack against defense counsel. It is not improper for the prosecutor to comment on the evidence in support of a criminal defendant's theory of the case, as opposed to attacking defense counsel personally. *See, e.g., United States v. Xiong*, 262 F.3d 672, 675 (7th Cir. 2001). Furthermore, "it was proper for the prosecutor to comment on the lameness of the defendant's case." *Id.*

Next, petitioner contends that the prosecutor improperly appealed to the jury's sympathy. Petitioner bases this claim on instances during closing argument in which the prosecutor recounted witness testimony describing petitioner's conduct at the scene of the accident (e.g., the way that petitioner "went over to his dying wife on the road and pulled her up by one arm like a rag doll," and how a witness testified that petitioner "was more concerned about having a cigarette lit than about his dying wife), as well as the victim's condition after the accident (e.g., the victim is unable to stand or walk on her own, unable to speak, and "has no cognitive thought process and is basically in a vegetative state"). Trial Trans. VII at pp. 786-87, 792. The prosecutor also recounted Dr. Minnick's testimony that it was a miracle that the victim has progressed to her present condition and that the doctor expects no further progress. *Id.* at p. 792. The prosecutor's comments, which summarized some of the testimony, did not deprive petitioner of a fair trial.

The prosecutor's statement that:

Death would have been kinder. I think we all know that.

comes close to eliciting juror sympathy. *See* Trial Trans. VII at p. 792. The prosecution may not urge jurors to identify individually with the victims with comments like "[i]t could have been you"

15

the defendant killed or "[i]t could have been your children." *Bedford*, 567 F.3d at 234, quoting *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008). Nor may the prosecutor make remarks calculated to have the jury decide the case on their emotions and fears rather than the evidence. *Johnson*, 525 F.3d at 484. In this case, the prosecutor's statements walked - but did not cross- a fine line with respect to eliciting juror sympathy. The prosecutor's argument was thought provoking, but fell short of calling on the jury to convict petitioner on their emotions or fear that the victim "could have been you."

Finally, petitioner contends that the prosecutor improperly appealed to the jury's civic duty in asking for a verdict against petitioner:

> A guilty verdict is mandated on the evidence in this case. Justice is mandated based on the evidence in this case. Justice is deserved for Audrey McCarty.

Trial Trans. at p. 798. This statement did not constitute prosecutorial misconduct. "Nothing prevents the government from appealing to the jurors' sense of justice, or from connecting the point to the victims in the case." *Bedford*, 567 F.3d at 234 (internal citation omitted).

In summary, petitioner has not demonstrated unfair prosecutorial misconduct. Appellate counsel cannot be found to be ineffective for failing to raise a meritless issue. *See Shaneberger*, 2010 WL 2794195 at *3; *Greer*, 264 F.3d at 676.

### C. *Blakely* sentencing claim

Petitioner claims that his sentence was unconstitutional under *Blakely v. Washington*, 542 U.S. 296 (2004). Petitioner was convicted of assault with intent to murder, M.C.L. § 750.83, a felony which is punishable by imprisonment in a state prison for life or any number of years. The trial court scored the minimum sentencing guidelines at 108 to 225 months, but then departed from the guidelines by sentencing petitioner to a term of imprisonment of 300 to 600 months (25 to 50 years). Petitioner contends that his sentence is invalid because the judge enhanced petitioner's sentence based upon his own finding rather than an admission by petitioner or a jury determination in violation of *Blakely*. The court disagrees.

The *Blakely* case involved the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the State of Washington's mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court held that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely*, 542 U.S. at 301 (*citing Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Petitioner's contention is without merit, because the rules announced in *Apprendi* and *Blakely* do not apply to sentences issued by Michigan courts under the state's indeterminate sentencing scheme. *See, e.g., Green v. Lafler*, No. 1:08-cv-358, 2010 WL 161002 (W.D. Mich. Jan. 8, 2010); *Tafil v. Burt*, No. 1:08-cv-590, 2009 WL 4908531 (W.D. Mich. Dec. 11, 2009); *Tillman v. Howes*, No. 1:06-cv-100, 2008 WL 4286065 (W.D. Mich. Sept. 12, 2008). The Sixth Circuit has recently reached the same conclusion. *See Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010) (Michigan's indeterminate sentencing scheme "does not violate [the criminal defendant's] due process rights or his right to a jury trial" under *Blakely*); *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (*Apprendi's* rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum).

There was no legal basis for appellate counsel to raise a *Blakely* claim on appeal. Accordingly, appellate counsel was not ineffective for failing to raise this pointless issue.

**D.     Ineffective assistance of trial counsel**

Finally, petitioner claims that appellate counsel should have raised four instances of ineffective assistance of trial counsel on appeal: that trial counsel failed to investigate the condition of the victim; that trial counsel failed to seek a continuance after learning that the victim knew about the trial and wanted to be present; that trial counsel failed to object to the prosecutor's remarks; and that trial counsel failed to object at sentencing.

As previously discussed, petitioner had no basis to raise an objection to either the prosecutor's remarks or the *Blakely* claim. For those reasons, it is unnecessary to address those issues. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999). *See Lilly v. Gillmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court").

Assuming that trial counsel should have performed an investigation of the victim's condition and sought a continuance due to the victim's appearance at trial, the court finds no prejudice in counsel's failure to do so. As previously discussed, medical evidence established that the victim was in a vegetative state. While she could engage in crude communication with medical personnel and her son, and was apparently capable of attending a brief portion of the trial proceedings, there is no evidence that the victim could have been a competent witness, much less that her potential testimony would have exonerated petitioner. In short, even assuming that trial counsel should have performed a more thorough investigation of the victim and sought a continuance, there is no indication that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687.

Petitioner has not demonstrated that trial counsel was ineffective. Appellate counsel cannot be found to be ineffective for failing to raise this issue which lacks merit. *See Shaneberger*, 2010 WL 2794195 at *3; *Greer*, 264 F.3d at 676.

### V. Recommendation

For these reasons, I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: July 28, 2010 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).