UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE McCARTY,

          Petitioner,

                                    Case No. 1:07-cv-663
v.                                  Hon. Gordon J. Quist

CARMEN D. PALMER,

          Respondent.

_____/

**REPORT AND RECOMMENDATION**

       Wayne McCarty, a prisoner currently incarcerated at a Michigan correctional facility,

has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

       **I.**        **Background**

       A jury convicted petitioner Wayne McCarty of assault with intent to commit murder,

M.C.L. § 750.83, for pushing his wife out of a moving vehicle with the intent to kill her.  *People v.*

*McCarty*, No. 242792, 2003 WL 22928926 at *1 (Mich. App. Dec. 11, 2003). The trial court

sentenced petitioner to a prison term of 25 to 50 years.  The Michigan Court of Appeals summarized

petitioner's appeal as follows:

>        Eyewitness testimony at the trial indicated that McCarty pushed his wife out
> of a truck he was driving, that she appeared almost lifeless when she hit the
> pavement, and that he both failed to help her and tried to stop others from doing so.
> The prosecutor introduced evidence that McCarty pushed or tried to push women out
> of moving vehicles twice before.  McCarty objected to the admission of this evidence
> at trial and challenges it on appeal.  He also challenges the presence in the courtroom
> of the victim, who was not a witness.

*Id.*

McCarty, through counsel, presented three issues on appeal:[1]

I.      Defendant was deprived of his Ams V and XIV rights of due process
        when the prosecutor permitted a police officer to expose his prior
        criminal history.

II.     Defendant was deprived of his Ams V, VI and XIV rights of due
        process with the victim was permitted to sit in court during the trial.

III.    Defendant was deprived of his Ams V and XIV rights of due process
        when the Prosecutor introduced evidence of prior violent acts
        committed by him.

Brief on Appeal (ECF No. 23).

The Michigan Court of Appeals affirmed petitioner's conviction on December 11,

2003.  *See McCarty,* 2003 WL 22928926.  The appellate court rejected McCarty's claim that the

prosecutor improperly introduced evidence of his past violent acts against the two previous victims,

because "the prosecutor offered the evidence to refute McCarty's claim that his wife's fall from the

car was an accident."  *Id*. at *1.  In addition, the appellate court found that McCarty's claim that the

victim's presence at the trial did not violate his constitutional right to a fair trial:

> The Crime Victim's Rights Act states that "[t]he victim has the right to be
> present throughout the entire trial of the defendant, unless the victim is going to be
> called as a witness."  Here, the victim did not testify.  Because the victim's presence
> was authorized by statute, we can find error only if the validity or applicability of the
> statute can be questioned.  McCarty does not question the Act's applicability, which
> is in any event clear, but does make a conclusory claim that the statute violated his
> right to a fair trial.  McCarty does not, however, cite authority to support this
> position. We see no merit to the argument that the victim's presence violated
> McCarty's constitutional right to a fair trial, particularly given that the victim's
> presence and identity were not revealed to the jury, that the jury was told to decide
> the case only on the evidence presented to it, and that any inference the jury may have
> drawn from the victim's appearance was merely duplicative of medical evidence.

---

[1] Issues I and II appear in the original brief, and Issue III appears in a supplemental brief.

Moreover, under the *Carines* standard, reversal is appropriate only where the defendant is actually innocent or there is serious error which affects the fairness, integrity, or public reputation of the judicial proceedings.  Given the eyewitness testimony and other evidence, including the medical evidence, of McCarty's guilt, we cannot say that he is actually innocent.  Nor do we see any error affecting the fairness, integrity, or public reputation of the judicial proceedings in allowing a crime victim to watch an open public trial in which the victim may be presumed to have a particular personal interest, where the victim's presence is authorized by statute.

*Id*. at*1-2 (footnotes omitted).  Petitioner did not appeal this decision to the Michigan Supreme Court.  *See* Amend. Petition at ¶ 9(g) (ECF No. 3, PageID.112).

Having abandoned his direct appeal, petitioner turned his attention to filing a motion for relief from judgment in the trial court pursuant to MCR 6.500, *et seq*., which that court denied. *See People v. Wayne Roy McCarty*, No. 00-76564-FC (Ingham Co. Cir. Ct.) (Opinion and Order) (June 22, 2005) (ECF No. 24).  McCarty did not submit a copy of his motion for relief from judgment.  However, the order denying the motion addressed seven issues:

    I.    Fundamental right of due process requires examination of the only available witness [i.e., the victim].

    II.    Defendant was denied a fair trial by interference with [his] right to present a defense.

    III.    Defendant was denied a fair trial by improper prosecutor argument where the prosecutor interjected personal opinions of defendant's credibility, denigrated defense counsel, [and] distorted the prosecutor's burden of proof by appealing to the jurors' sympathy and civic duty.

    IV.    Defendant's sentence was unconstitutionally entered where the facts found to raise defendant's sentencing guidelines, and to raise his sentence past limits of the sentencing guidelines.

    V.    Defendant was denied a fair trial by ineffective assistance of counsel at trial.

VI.    Defendant was unconstitutionally prejudiced by ineffective assistance of appellate counsel.

VII.    Defendant's issues should be properly heard on the merits.

*Id*.

McCarty, through counsel, sought leave to appeal the motion raising these seven issues in the Michigan Court of Appeals. *See* Application for leave to appeal (ECF No. 24). The Michigan Court of Appeals denied the application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Wayne Roy McCarty*, No. 271034 (Mich. App. Dec. 27, 2006). Petitioner raised the same issues in an application for leave to appeal to the Michigan Supreme Court, which that court denied because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Application for leave to appeal; *People v. Wayne Roy McCarty*, No. 133233 (Mich. June 26, 2007) (ECF No. 25).

McCarty, through counsel, sought federal habeas relief in this Court. His amended petition for writ of habeas corpus raised the seven issues:

I.    Denial of Due Process by refusal to permit examination of the only available witness that could corroborate petitioner's testimony and innocence.

II.    Fair trial denied by interference by prosecutor with right to present a defense.

III.    Denial of fair trial by improper prosecutor argument.

IV.    Unconstitutional sentence based upon fact finding by the judge instead of the jury.

V.    Petitioner denied a fair trial by ineffective assistance of counsel.

VI.    Ineffective assistance of appellate counsel.

VII.    Petitioner's issues are properly raised and should be heard on the merits.

Amend. Petition (ECF No. 3).

This Court denied the petition.  *See* Judgment (ECF No. 31).  First, the Court denied

petitioner's claim that ineffective assistance of appellate of counsel (Issue VI) on the merits.  Second,

Issue VII was dismissed because it was not a claim for federal habeas relief.  Third, Issues I, II, III,

IV and V were denied as procedurally defaulted.  *See* Opinion (ECF No. 30).  However, the Court

granted petitioner a certificate of appealability "on the single issue of whether the Michigan Supreme

Court's use of a form order invoking M.C.R. § 6.508(D) suffices as a reasoned decision triggering

a procedural bar."  Opinion at PageID.232.

The Sixth Circuit vacated the Court's judgment and remanded for consideration of

the merits of the procedurally defaulted claims:

> On appeal, McCarty argues that the district court erred by concluding that the majority of his claims were procedurally defaulted.  A federal habeas corpus claim is procedurally defaulted when a petitioner fails to comply with a state procedural rule, the state courts enforce the rule, the rule is an adequate and independent state ground for denying review of a federal constitutional claim, and no cause and prejudice excusing the default have been established. *Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011).  To determine whether a state procedural rule was applied to bar a claim, we look to the last reasoned state-court decision disposing of the claim. *Id.*  We apply a presumption that, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

> Because Michigan's Rule 6.508(D) form orders were unexplained, *see Guilmette v. Howes*, 624 F.3d 286, 289-92 (6th Cir. 2010) (en banc), the last reasoned state-court decision that rejected McCarty's claims was the trial court's denial of his motion for relief from judgment.  That decision addressed McCarty's claims on the merits, rather than clearly and expressly relying on a procedural bar. *See Bowling v. Parker*, 344 F.3d 487, 498-99 (6th Cir. 2003).  Applying the

presumption that the later unexplained orders rest upon the same ground, we must conclude that the state courts of Michigan did not enforce a procedural rule to bar McCarty's claims and that, as a result, his claims are not procedurally defaulted. *See Guilmette*, 624 F.3d at 291-92.

Accordingly, we vacate the district court's judgment. On remand, the district court is instructed to address the merits of those claims that it previously found to be procedurally defaulted.

*McCarty v. Palmer*, 461 Fed. Appx. 445, 446-47 (6th Cir. 2012).

Consistent with the Sixth Circuit's order on remand, the Court will review the merits of the procedurally defaulted claims raised in Issues I, II, III, IV and V. The Court makes the following observations with respect to the review on remand. Because the claim of ineffective assistance of appellate counsel (Issue VI) was addressed on the merits, it is not subject to remand and will not be addressed in this report and recommendation (R&R).

## II.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). In the present case, petitioner has exhausted his state remedies with respect to his habeas claims.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 101-102 (2011). The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 773 (2010) (internal quotation marks and citations omitted). This deferential standard "requires petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington*, 562 U.S. at 103. Thus, "[a] state court's determination that a claim lacks merit

precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (internal quotation marks omitted).

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state

8

court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

### III.    Discussion

**A.    Denial of Due Process by refusal to permit examination of the only available witness that could corroborate petitioner's testimony and innocence (Issue I).**

### 1.    Background

Petitioner summarized the claim presented in Issue I as follows:

> Prosecutor claimed Petitioner pushed the victim out of his truck and the victim is now in a vegetative state and can not communicate, and Petitioner was unable to interview her or present her testimony, yet Prosecutor claimed she could communicate with victim and victim exercised her right to be present at the trial to watch proceedings; also probate documents demonstrated present ability to communicate and cognitive abilities.

Amend. Pet. at PageID.116.

By way of background, this claim arose from the victim's appearance at the courthouse on February 7, 2002 for the purpose of attending a portion of the trial as allowed under the Crime Victim's Rights Act, M.C.L. § 780.761.  Before calling in the jury on that date, the prosecutor, defense counsel and the trial judge discussed the victim's proposed attendance at the trial.

The prosecutor and defense counsel were aware of the victim's condition, because it was addressed at the preliminary examination. The Court previously summarized the  background of this claim when it addressed the merits of petitioner's related claim for ineffective assistance of appellate counsel:

Petitioner contends that appellate counsel should have contested the prosecutor's interference with his ability to secure testimony from the victim. At the preliminary examination on November 30, 2000, Dr. Ben Bachulis testified that the victim was in "essentially a vegetative state." Prel. Exam. Trans. at p. 13 (docket no. 12). The victim did not eat, speak or talk. *Id.* At the time of trial in February 2002, the victim's condition had improved to some extent. On the third day of trial, the prosecutor advised the court that the victim would attend the trial under Michigan's crime victim's rights act. Trial Trans. III at pp. 219-20 (docket no. 16). At that time, the prosecutor advised the court that the victim was fairly immobile, that "[s]he doesn't really move her head very much, but she is able to nod her head up and down and sideways a very little bit to indicate yes or no," and that the victim was not able to speak, explaining that "she can move her lips a little bit, and if you watch really closely you can kind of get an idea of what she's saying." *Id.* The prosecutor stated that the victim would appear for a few hours and then return to the nursing home. *Id.* at pp. 220-21. Defense counsel raised an objection, stating to the court that he had been advised throughout the criminal matter that "the victim was not able to communicate." *Id.* at p. 221. The prosecutor responded that while the victim could nod her head to communicate "yes" to her son, she cannot effectively communicate and "could never be found competent to be a witness." *Id.* at p. 226. The judge ruled that the victim could attend the trial under the crime victim's right act, noting that her ability to communicate was a different issue. *Id.* at pp. 227-28. When defense counsel raised the issue of the victim's ability to communicate, the court noted the absence of any evidence of such communication, stating that "[a]ll I've been told this morning by an officer of the court is that she has heard that the victim can nod her head in response to questions." *Id.* at p. 229.

R&R (ECF No. 28, PageID.202-203). Given the Sixth Circuit's instructions on remand, the Court will provide a more expansive discussion of this issue.

On February 7, 2002, the prosecutor made the following representation regarding the reason for the victim's attendance at the trial and her condition:

You honor, Audrey McCarty, the victim in this case, is out in a conference room. The family asked her if she wanted to come here to court at any time during these proceedings, and they made arrangements for me to go meet with her on Friday, and her son, Robert, and her brother, Jim, were there and her son Robert informed her that Wayne was going to trial. He didn't say anything really more than that, just that Wayne was going to trial, and he asked her if she wanted to come to court.

10

Audrey is not able to speak.  She can move her lips a little bit, and if you watch really closely you can kind of get an idea of what she's saying.  She's fairly immobile.  She doesn't really move her head very much, but she is able to nod her head up and down and sideways a very little bit to indicate yes or no.

I asked her son to ask her other questions, just so that we knew that she understood the question.  And her son Robert asked her questions like, you know, mom, are you feeling okay today? And she was able to nod her head a little bit.  A nurse came in and asked her if she was feeling okay and she was able to nod her head a little bit.  So then I had her son ask her again if she wanted to come to court or if she would rather not come to court, and she nodded her head that she wished to come to court, and, Your Honor, under the crime victim's right act, it's 780.761 -- I brought a copy of the statute if you'd like to look at it -- there have been some recent changes to the statute, but this particular statute indicates that the victim has a right to be present throughout the trial, particularly if she's not going to be called as a witness.

So I -- I'm not planning on having her here long.  I think she just wanted to see what was going on, and we planned no more than a three hour round trip to be out of the nursing home, so it's not like she's going to be here all day or for the remainder of the trial.  I think she simply wanted to come, see what was going on , and then go on back to the nursing home.  . .

Trial Trans. II (Feb. 7, 2002) at pp.219-21 (ECF No. 16).

Plaintiff's counsel objected:

Your Honor, I don't want to sound difficult, but as late as last week I even used the term [sic] to Ms. Phillips that I was relying on her representations that the victim was not able to communicate, and it was described to me that she could maybe move a hand up or down or arm, but now we hear that she might even be able to move her lips, and the very presence of this victim --  and I'm not disputing that she was injured, Your Honor.  I'm not disputing that, but by her very presence, if she comes in here and possibly makes a motion or maybe an emotional response, we were told specifically that -- and one of the reasons I didn't want to go to the Ionia area when this issue came up a week ago about the videotape was I didn't even want to know her specific location so there could be no inference that somehow that someone from my side knew where she was and created an appearance of impropriety.  Part of that was because we were told that even seeing Wayne might cause her some emotional distress, that it would create a setback for her.

*Id*. at pp. 221-223.

11

Ultimately, the trial court ruled that

> [Audrey McCarty] has a right under the victim's rights act to be here unless she's going to be a witness.  It couldn't be clearer.  I mean, I'm well aware and I haven't forgotten the ruling I made before the trial started when the people wanted to take a videotape of her and I ruled that that would be more prejudicial than probative, and I still believe that's true.  I believe I was right.  But this is a completely different statutory right that's being asserted here.  So I'm not aware of any case law which creates an exception, so if it's reversible error, so be it.  I think she has a right to be here.

*Id*. at p. 227.

Petitioner's counsel pointed out that he had no notice of the victim's condition and intent to attend a portion of the trial, and that he "relied on the prosecutor's representations that the victim was not communicative except for the fact that she could raise her arm." *Id*. at page 227-28. The judge responded that "[c]ommunicative is a whole different set of issues" and that the issue being addressed was "whether she has a right to be here," stating that "the statute couldn't be clearer." *Id*. at p. 228.

Counsel also stated that it was his understanding that the victim could not travel, and that "[n]ow I'm wondering whether or not there has been information withheld with reference to her ability to communicate in the near future, because she's now nodding yes to answers to the family, which I was not told of, so we may have a potential material witness here." *Id*. Ultimately, the judge stated that, "I can't predict what kind of communication ability she might have in the future anymore than you can.  I imagine not even the doctors can predict that, so I think we're just going to have to proceed." *Id*. p. 229.  Ultimately, the victim attended the trial, although it is unclear how long she stayed.

The next day, the victim's treating physician explained her condition.

On the fourth day of trial, Paul D. Minnick, M.D., identified the victim as a patient in his nursing home. Trial Trans. IV at pp. 350-51. Dr. Minnick related that the victim arrived at the nursing home comatose and had made improvements over the years. *Id.* at pp. 351-56. The doctor summarized her present condition in response to two questions by the prosecutor:

> Q.    All right. Is she in a vegetative state?
>
> A.    Basically, she is in a vegetative state.
>
> Q.    Okay. And what exactly does that mean?
>
> A.    She's not communicative. She's unable to take nutrition on her own. The only thing she's really able to do is, if asked specific questions, slightly nod her head, move her eyes. She will smile sometimes. An example, this Christmas when I was into her room there was  -- they have a radio playing to stimulate her, and I turned it over to Christmas music and I saw a slight smile on the left side. But other than that, no ma'am.

> *Id.* at pp. 358-59.

R&R (ECF No. 28, PageID.203-204).

In his motion for relief from judgment, petitioner contested Dr. Minnick's opinions expressed at trial. Petitioner presented no expert medical testimony to refute Dr. Minnick's opinions. Rather, petitioner relied on cryptic reports made by the victim's guardian ad litem (GAL) and guardian. In a "Report on review of guardianship of legally incapacitated individual" (Guardianship Report) dated December 10, 2001 (about two months before the trial), GAL Haley reported that he was not able to visit the ward, Ms. McCarty, who was a patient at Heartland Health Care Center in Ionia, Michigan. Guardianship Report (ECF No. 1-4, PageID.76, 81). Haley issued a report based on a conversation with the guardian, the victim's brother, who stated "that she now has some limited

13

communication (basic) but does not talk in sentences." *Id*.  She continues to be tube fed. *Id*.  Haley spoke with the ward's social worker who stated that the victim is participating in physical therapy, and "that Ms. McCarty can appropriately answer questions if the answer is yes or no but continues to need assistance for all of her personal hygiene." *Id*.  In an annual report prepared a week later, the guardian stated that the victim's mental health has improved, i.e., "Understands simple communication and simple directions."  Annual Report of Guardian on Condition of Legally Incapacitated Individual (Dec. 17, 2001) (ECF No. 1-4, PageID.83).  However, the guardian also stated that the victim "does not have capacity for decision making." *Id*.  In a later report dated December 17, 2002 (about 10 months after the trial), the guardian stated that the victim's mental health has improved, i.e., "Communicates in writing answers to questions."  Annual Report (Dec. 17, 2002) (docket no. 1-4, PageID.86).  However, the guardian again noted that the victim "does not have capacity for decision making." *Id*.

## 2.    The motion for relief from judgment

The trial court's order regarding the motion for relief from judgment is not a model of clarity.[2]  While referring to Issues I and II, the trial court addressed claims which appeared to have been raised on the direct appeal (i.e., eyewitness testimony regarding petitioner's prior conduct):

> Defendant contends that the trial court erred by allowing eyewitness testimony that, prior to the charged offense, Defendant was observed on two separate occasions, pushing two other women from moving vehicles; and by allowing Audrey McCarty ("Victim") in the courtroom during trial violated his constitutional rights to due process.  The trial court opined that the prosecutor's eyewitness testimony pursuant to MRE 404(b) was relevant because Defendant claimed that his wife's fall from the moving vehicle was accidental.

---

[2] The Court notes that while this matter was tried by the Hon. Lawrence W. Glazer, the amended motion for relief from judgment was addressed by a different judge, the Hon. Beverly Nettles-Nickerson.

The trial court did not abuse its discretion by permitting other testimony relating to prior acts, pursuant to MRE 404(b), because the testimony was more probative than prejudicial and relevant to the issue of Defendant's intent. The Victim's presence in the courtroom during trial is authorized pursuant to the Crime Victims Right Act, MCL 780.751; MSA 28.1287(751).

Further, the Victim did not testify and the trial court instructed the jury to decide the case based only on the evidence presented. Also, the medical testimony described the Victim's vegetative physical condition and appearance.

Reversal of Defendant's conviction is only appropriate where "Defendant is actually innocent or there is a serious error which affects the fairness, integrity, or public reputation of the judicial proceedings." *People v. Carines*, 460 Mich. 750, 774; 597 NW2d 130 (1999). There was overwhelming evidence at trial, for the jury to weigh, to determine Defendant's guilt beyond a reasonable doubt. The Michigan Legislature enacted MCL 769.26; MSA 28.1096, a statute addressing errors in judicial proceedings, which reads as follows:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

In other words, defendants are not entitled to relief from judgment due to a harmless error.

*People v. McCarty*, No. 00-76564-FC (Opinion and Order) (June 22, 2005) (docket no. 24).

The trial judge then addressed Issues III, IV, V, VI and VII. *See id.*, slip op. at 4-7.

However, the discussion of these issues included a discussion of the due process claims related to

the victim's medical condition raised in Issue I as well as the claim of prosecutorial misconduct

raised in Issue II:

Defendant's remaining issues essentially assert a denial of due process and right to a fair trial because Defendant's trial attorney was misinformed by the prosecutor regarding the Victim's ability to communicate; the prosecutor's

15

inappropriate prejudicial comments and actions regarding Defendant; the trial court's upward sentence departure without objective verifiable facts; and Defendant's trial attorney and prior appellate counsel were ineffective by failing to make timely objections or raise constitutional error for appellate review.

The Court finds Defendant's remaining issues lack merit. The medical testimony verified that the Victim suffered brain damage and was in a vegetative state unable to communicate as a result of the injuries sustained from the charged offense.  The Victim required hospitalization or full-time nursing care in a medical facility for the remainder of her life.  Thus, the prosecutor did not misrepresent Defendant's [sic] medical condition to Trial Counsel.

*Id.*, slip op. at 4.

### 3. Discussion

Petitioner summarized the claim presented in Issue I as follows:

Prosecutor claimed Petitioner pushed the victim out of his truck and the victim is now in a vegetative state and can not communicate, and Petitioner was unable to interview her or present her testimony, yet Prosecutor claimed she could communicate with victim and victim exercised her right to be present at the trial to watch proceedings; also probate documents demonstrated present ability to communicate and cognitive abilities.

Amend. Pet. at PageID.116.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (internal quotation marks omitted).  In *Washington v. Texas*, 388 U.S. 14 (1967) the Supreme Court addressed a criminal defendant's due process right to present witnesses as part of his defense:

The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may

16

decide where the truth lies.  Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process of law.

*Washington*, 388 U.S. at 19.

The record reflects that the victim's communication skills were both extremely limited and subject to interpretation.  She was present in court for part of one day as allowed under the Crime Victim's Rights Act.  Defense counsel primarily objected to the prejudice in having her present in the courtroom in her wheelchair, with the victim's ability to testify discussed as a secondary issue.  Based on the record, it is clear that the victim could not give verbal answers to questions (she could "slightly nod her head," "move her eyes," and "smile sometimes") and there was no assurance that she could understand questions presented.  The trial judge relied on this testimony in denying the motion for relief from judgment, when she found that "the medical testimony described the Victim's vegetative physical condition and appearance" and "[t]he medical testimony verified that the Victim suffered brain damage and was in a vegetative state unable to communicate as a result of the injuries sustained from the charged offense."  *McCarty*, No. 00-76564-FC, slip op. at 3-4 (Opinion and Order) (June 22, 2005) (docket no. 24).

Petitioner relies on the reports of the victim's GAL (who issued a report without personally meeting the victim) and the guardian.  These cursory reports are not medical opinions.  The guardian's annual report of the victim's condition from December 17, 2001 (about two months prior to trial) stated that, in the guardian's opinion, while the victim understood "simple communication" and "simple directions," she did not have the "capacity for decision making."

Even if the Court accepted the guardian's statements at face value, it is unclear

17

exactly what testimony defense counsel could have elicited from the victim or how he would have accomplished that task.  The record reflects that the victim was able to be away from the nursing home long enough to watch some of petitioner's trial, that she could sit in a wheelchair during that time, and that she could communicate "yes" or "no" as prompted and interpreted by her relatives and the nursing home employees.  However, this record does not demonstrate that the victim could communicate effectively for purposes of a court proceeding, e.g., that she could understand questions from counsel, that she could answer questions without prompting, that she could communicate answers to the jury without the help of a third-party, that she could clarify answers, or that she could be cross-examined.   Finally, if the victim did not have the capacity for "decision making," she would not have the capacity to formulate testimony, respond to cross-examination, seek clarification of counsels' questions, or clarify her answers – all of which require some level of decision making on the part of the witness.  Accordingly, the Court concludes that no due process violation occurred.

### B. Petitioner was denied a fair trial because the prosecutor interfered with his right to present a defense (Issue II).

Petitioner summarized the claim presented in Issue II as follows:

> The prosecutor secured favorable discovery rulings by representing to the trial court and defense counsel that the victim could not communicate and was in a vegetative state so that Petitioner would not be able to interview the victim or to secure her testimony which was critical to corroborate Petitioner's testimony and to provide evidence of his actual innocence.  The representations were known to be false by the prosecutor.

*Id*. at PageID.117.   In short, petitioner contends that the prosecutor engaged in misconduct by misrepresenting the victim's ability to communicate.

18

"When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  "On habeas review, claims of prosecutorial misconduct are reviewed deferentially." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003), citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  "To be cognizable, the misconduct must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.*, quoting *Darden*, 477 U.S. at 181 (internal quotation marks omitted).  As discussed in § III.A., *supra*, the victim did not have the ability to communicate effectively.  The prosecutor's representations regarding the victim's condition were consistent with Dr. Minnick's testimony and did not so infect the trial with unfairness as to make petitioner's conviction a denial of due process.  Accordingly, this claim should be denied.

### C.    Denial of fair trial by improper prosecutor argument (Issue III).

Petitioner maintains that the prosecutor improperly accused him of being a liar, improperly denigrated defense counsel, improperly appealed to the jury's sympathy, and improperly appealed to the jury's civic duty.  Petitioner's Brief at 25-35 (EC No. 1-3).  The trial court addressed these claims as follows:

> Furthermore, the prosecutor's comments and actions are not reversible error because they did not deny Defendant his right to a fair, impartial trial.  *In People v. Knapp*, 244 Mich. App. 361, 381; 624 NW2d 227 (2001), the Court held that during closing argument the prosecutor is permitted some latitude and may argue the evidence and reasonable inferences therefrom as it relates to the prosecutor's theory of the case.  The prosecutor's conduct at Defendant's trial was not outcome determinative and Defendant was not denied his right to a fair trial.  *People v. Rodriguez*, 251 Mich App 10, 32; 650 NW2d 96 (2002).

*McCarty*, No. 00-76564-FC, slip op. at 5 (Opinion and Order) (June 22, 2005).

In evaluating such claims of prosecutorial misconduct, the court considers the prosecutor's remarks within the context of the entire trial to determine whether any improper remarks resulted in prejudicial error. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). "Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Id.* However, prosecutors cannot offer their opinions as to credibility of a witness or the guilt of a defendant, or discuss any purported facts not introduced into evidence. *Id.* Nevertheless, even if the prosecutor's conduct was improper or even universally condemned, the court can provide federal habeas corpus relief only if the statements were so flagrant and egregious as to deny the petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Bowling*, 344 F.3d at 512; *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). If the court finds that the prosecutor made improper remarks, it should consider four factors in determining whether the remarks are so flagrant as to rise to the level of a due process violation:  (1) the likelihood that the prosecutor's remarks tended to mislead the jury or to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately placed before the jury; and (4) the total strength of the evidence against the accused. *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005). "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (citation and internal quotations omitted).

**1.    The prosecutor called petitioner a liar**

Petitioner contends that during closing argument, the prosecutor accused him of being a liar.  For example, the prosecutor:  referred to petitioner's testimony as "basically ridiculous" and "not based on reality;" that his version of events is laughable; that petitioner denied driving the truck because he is guilty and he knows it; and that petitioner had 15 months to review police reports and witness statements, which gave him "plenty of time to come up with his version of what happened."  Trial Trans. (Vol. VII) at pp. 784, 789, 795 and 831 (ECF No. 20).  These statements do not rise to the level of a federal constitutional violation.  "The prosecution necessarily has wide latitude during closing argument to respond to the defense's strategies, evidence and arguments."  *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (internal quotation marks omitted).  In this case, the prosecution could properly comment on plaintiff's credibility as a witness.  *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000).  When a defendant takes the stand, "his credibility may be impeached and his testimony assailed like that of any other witness."  *Id.*, *quoting Brown v. United States*, 356 U.S. 148, 154 (1958).  *See, e.g., Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir.1988) (holding that the prosecutor's deliberate, repeated references to the defendant as a "deadbeat," a "thief," a "creep" and a "liar" did not violate due process).  Accordingly, the prosecutor's comments were not improper.

### 2.    The prosecutor denigrated defense counsel

Next, petitioner contends that the prosecutor denigrated defense counsel by arguing that the defense could not prove its claim "that it was physically impossible for [d]efendant to commit this crime."  Trial Trans. VII at pp. 783-84, 789.  The prosecutor's argument was in the context of disputing petitioner's theory of the case, including petitioner's claim that he was not driving the vehicle.  *Id.* at p. 789.  The prosecutor did not launch a personal attack against defense

counsel.  It is not improper for the prosecutor to comment on the evidence in support of a criminal

defendant's theory of the case, as opposed to attacking defense counsel personally.  *See, e.g., United*

*States v. Xiong*, 262 F.3d 672, 675 (7th Cir. 2001).  Furthermore, "it was proper for the prosecutor

to comment on the lameness of the defendant's case."  *Id.*

### 3.    The prosecutor improperly appealed to the jurors' sympathy

Next, petitioner contends that the prosecutor improperly appealed to the jury's

sympathy by referring to petitioner's conduct at the scene of the accident (e.g., the way that petitioner

"went over to his dying wife on the road and pulled her up by one arm like a rag doll," and how a

witness testified that petitioner "was more concerned about having a cigarette lit than about his dying

wife), and the victim's condition after the accident (e.g., the victim is unable to stand or walk on her

own, unable to speak, and "has no cognitive thought process and is basically in a vegetative state").

Trial Trans. VII at pp. 786-87, 792.  The prosecutor also recounted Dr. Minnick's testimony that it

was a miracle that the victim has progressed to her present condition and that the doctor expects no

further progress.  *Id.* at p. 792.  The prosecutor's comments, which summarized some of the

testimony presented to the jury, did not deprive petitioner of a fair trial.

In this regard, the prosecutor's statement -- "Death would have been kinder.  I think

we all know that." -- comes close to eliciting juror sympathy.  *Id.* at p. 792.  The prosecution may

not urge jurors to identify individually with the victims with comments like "[i]t could have been

you" the defendant killed or "[i]t could have been your children."  *Bedford*, 567 F.3d at 234, quoting

*Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008).  Nor may the prosecutor make remarks calculated

to have the jury decide the case on their emotions and fears rather than the evidence.  *Johnson*, 525

F.3d at 484.  In this instance, the prosecutor's argument was thought provoking, but fell short of calling on the jury to convict petitioner on their emotions or fear that the victim "could have been you."

### 4. The prosecutor improperly appealed to the jurors' civic duty

Finally, petitioner contends that the prosecutor improperly appealed to the jury's civic duty in asking for a verdict against petitioner:

> A guilty verdict is mandated on the evidence in this case.  Justice is mandated based on the evidence in this case.  Justice is deserved for Audrey McCarty.

Trial Trans. VII at p. 798.  This statement did not constitute prosecutorial misconduct.  "Nothing prevents the government from appealing to the jurors' sense of justice, or from connecting the point to the victims in the case." *Bedford*, 567 F.3d at 234 (internal citation omitted).  In summary, petitioner has not demonstrated prosecutorial misconduct.  Accordingly, these claims should be denied.

### D. Unconstitutional sentence based upon fact finding by the judge instead of the jury (Issue IV).

Petitioner was convicted of assault with intent to murder, M.C.L. § 750.83, a felony which is punishable by imprisonment in a state prison for life or any number of years.  At the outset of petitioner's sentencing, the trial court stated: that petitioner was convicted of assault with intent to murder; that the maximum sentence for the offense is life or any term of years; that the guidelines are calculated at 108 to 225 months on the minimum sentence by the probation department; that petitioner had been previously convicted of one felony and six misdemeanors; and that he had jail time credit of 518 days as of March 27, 2002.  Sent. Trans. at p. 3 (ECF No. 22).

The prosecutor pointed out that the pre-sentence report was incorrect in that petitioner had five misdemeanors, and then provided evidence of two additional misdemeanor convictions (assault and battery and entry without permission) committed in 1990.  *Id*. at p. 4.  Thus, petitioner had seven misdemeanor convictions in addition to the felony.  *Id*. at pp. 4-5. The guideline score was raised 20 points due to these additional convictions.  *Id*. at p. 5.

Then, petitioner's counsel objected to the scoring of offense variable (OV) 4, which was scored at ten points for psychological injury to the victim. *Id*. at pp. 6-9.  The trial court denied the objection. *Id*. at pp. 8-9.  After taking into account the additional misdemeanor convictions, the guidelines range for the minimum sentence was recalculated as 126 to 262 months.  *Id*. at pp. 7, 10.

During allocution, petitioner's counsel asked the court to stay within the guidelines of 126 months to 262 months, and argued to reduce the sentence by pointing out that petitioner was extremely remorseful, that he had an excellent work history, and that while petitioner had a criminal history, there was "reason for hope."  *Id*. at pp. 9-11.

Prior to issuing his sentence, the trial judge noted the testimony by plaintiff's two past victims, in addition to testimony about what happened to the victim in this case, and concluded that the testimony demonstrated beyond any doubt that petitioner had "a pattern of violence against women," that petitioner was incorrigible, that petitioner was beyond rehabilitation, and that he posed "an extreme danger to any woman who has the misfortune to be attracted to [him]." *Id*. at p. 19.  The judge found that the guidelines failed to take account either petitioner's incorrigibility or the fact that his assaultive crime was in violation of a personal protection order (PPO).  *Id*. at pp. 19-20.  For these reasons, the judge sentenced petitioner to a minimum term of 25 years and a maximum term

of 50 years.  *Id*.  The minimum term of 25 years (300 months) exceeded the guidelines range by 38 months.

In addressing the motion for relief from judgment, the trial court concluded that there was no error in sentencing:

> Defendant's sentence was above the statutory guidelines.  However, the trial court articulated substantial and compelling reasons for the upward departure that were objective and verifiable.  On the record, Judge Glazer stated that the sentencing guidelines do not account for a pattern of behavior by Defendant that is incorrigible; Defendant's violation of a personal protection order by committing a serious offense; and need to protect the community.

*McCarty*, No. 00-76564-FC, slip op. at 5 (Opinion and Order) (June 22, 2005).

Petitioner contends that his sentence was unconstitutional under *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005), based on the sentencing guidelines scoring and additional findings by the sentencing judge, neither of which were supported by the jury's verdict.  With respect to scoring, petitioner contends that: (1) the scoring of 10 points of OV 18, "Operator ability affected by alcohol or drugs" should not have been scored because the jury found petitioner guilty of assault with intent to murder, a crime which did not involve operation of a motor vehicle, with no finding or confession to support the scoring; (2) the scoring of 25 points for OV 3 for life threatening or permanent incapacitating injury occurred to a victim should not have been scored because the jury made no finding regarding the nature of the victim's injuries and there was no confession on the nature of the injuries; and (3) the scoring of 10 points under OV 4, psychological injury to a victim requiring professional treatment, where the jury made no factual determination of the nature of psychological injuries to the victim, nor was there a

25

confession to the same.  *Id*. at PageID.26-27.  Petitioner contends that the proper sentencing

guidelines range was 51 to 85 months.  *Id*. at PageID.27.

Petitioner also contends that the trial judge violated *Blakely* and *Booker* when he

found:

> (a) That although Petitioner was not charged with assaulting his former wife, the judge was persuaded that "the testimony at trial demonstrates beyond any doubt a pattern of violence against women before many years"; (b) That Petitioner's pattern of assaultive behavior made him incorrigible; (c) That all the foregoing show Petitioner is dangerous to women.

*Id*. at PageID.27-28.  Petitioner further states that "[t]here was no jury finding of his guilt of the prior

assault and no jury finding that he is dangerous, and no jury finding that he is dangerous to women."

*Id*. at PageID.28.

As an initial matter, to the extent petitioner's claim that his sentencing guidelines

were scored incorrectly presents a question of state law not cognizable on habeas review. Federal

habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties

of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "A federal court may not issue

the writ on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Federal habeas corpus relief does not lie for errors of state law, which includes the state's

computation of petitioner's prison term.  *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003),

citing *Estelle*, 502 U.S. at 68.  *See Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (alleged

violation of state law with respect to sentencing is not subject to federal habeas relief).  "As long as

the sentence remains within the statutory limits, trial courts have historically been given wide

discretion in determining 'the type and extent of punishment for convicted defendants.'"  *Id.* at 301,

26

*quoting Williams v. New York*, 337 U.S. 241, 245 (1949).  As discussed, petitioner's sentence fell within the statutory range  of "life or any number of years."  *See* M.C.L. § 750.83.

The applicability of *Blakely* and *Booker* to federal habeas review of a state conviction in Michigan was recently addressed in *Cummings v. Campbell*, No. 17-10523, 2017 WL 957688 at *3 (E.D. Mich. March 13, 2017).  In *Cummings* a jury convicted the defendant of four counts of armed robbery and one count of felony firearm.  *Cummings*, 2017 WL 957688 at *1.  After a jury trial, the court sentenced the defendant to concurrent  terms of 285 months to 60 years on the armed robbery convictions and a consecutive 2 years on the felony-firearm conviction.  *Id.*  In his federal habeas action, the defendant claimed that the trial judge violation his Sixth Amendment right to trial by jury by using factors that had not been proven beyond a reasonable doubt or admitted to by petitioner in scoring the guidelines ranger for the robbery convictions.  *Id.* at *2.

In denying petitioner's claims, the Court traced the evolution of the law with respect to facts used in sentencing since *Apprendi v. New Jersey*, 530 U.S. 466 (2000), stating in pertinent part:

> On June 17, 2013, the United States Supreme Court ruled that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt.  *See Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013).  *Alleyne* is an extension of the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), in which the U.S. Supreme Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. In reaching this conclusion, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), in which the Supreme Court had held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt to a factfinder.  *Alleyne*, 133 S. Ct. at 2157-58.  The Supreme Court, however, indicated that its decision did not mean that every fact influencing

judicial discretion in sentencing must be proven to a jury beyond a reasonable doubt. *Id*. at 2163.

At the time of Petitioner's conviction and sentence, *Harris* was good law.  In addition, *Alleyne* has not been made retroactive to cases on collateral review.  *See In re Mazzio*, 756 F.3d 487, 489-90 (6th Cir. 2014).  Although the Michigan Supreme Court recently relied on *Alleyne* to hold that Michigan's Sentencing Guidelines scheme violates the Sixth Amendment right to a jury trial, *See People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), a federal district court may only grant habeas relief if it finds that the state court's decision was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the *Supreme Court of the United States*' or 'was based on an unreasonable determination of the facts in light of the evidence that was presented in the State court proceeding.'" *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) (quoting 28 U.S.C. § 2254(d)) (emphasis added).  In addition, "[t]he law in question must have been clearly established at the time the state-court decision became final, not after."  *Id*. (citing *Williams v. Taylor*, 529 U.S. at 380).  Because the Supreme Court at the time of Petitioner's conviction did not require that facts which increase a criminal defendant's minimum sentence be proven beyond a reasonable doubt, Petitioner is not entitled to habeas relief on his claim.  *See also Gibson v. Tribley*, 2013 WL 3353905, at * 8 (E.D. Mich. July 3, 2013) (Tarnow, J.).

*Alleyne* is also inapplicable to Petitioner's case, because the Supreme Court's holding in "*Alleyne* dealt with judge-found facts that raised the mandatory minimum sentence under a statute, not judge-found facts that trigger an increased guidelines range," which is what happened to Petitioner in this case.  *See United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014); *see also United States v. James*, 575 Fed.Appx. 588, 595 (6th Cir. 2014) (collecting cases and noting that at least four post-*Alleyne* unanimous panels of the Sixth Circuit have "taken for granted that the rule of *Alleyne* applies only to mandatory minimum sentences."); *Saccoccia v. Farley*, 573 Fed.Appx. 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory statutory minimum [are] part of the substantive offense.' .  .  . It said nothing about guidelines sentencing factors[.]").  The Sixth Circuit, albeit in an unreported case, has ruled that *Alleyne* did not decide the question whether judicial fact-finding under Michigan's indeterminate sentencing scheme violates the Sixth Amendment.  *See Kittka v. Franks*, 539 Fed.Appx. 668, 673 (6th Cir. 2013).  Although the Michigan Supreme Court in *People v. Lockridge* held that Michigan's Sentencing Guidelines scheme violates the Sixth Amendment right to a jury trial, Petitioner cannot rely on *Lockridge* to obtain relief with this Court.  The AEDPA standard of review found in 28 U.S.C. § 2254 (d)(1) prohibits the use of lower court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law.  *See Miller v.*

*Straub*, 299 F. 3d 570, 578-579 (6th Cir. 2002). "The Michigan Supreme Court's decision in *Lockridge* does not render the result 'clearly established' for purposes of habeas review." *Haller v. Campbell*, 2016 WL 1068744, at * 5 (W.D. Mich. Mar. 18, 2016). In light of the fact that the Sixth Circuit has ruled that *Alleyne* does not apply to sentencing guidelines factors, reasonable jurists at a minimum could disagree about whether *Alleyne* applies to the calculation of Michigan's minimum sentencing guidelines. *Id*. at * 6. "*Alleyne* therefore did not clearly establish the unconstitutionality of the Michigan sentencing scheme and cannot form the basis for habeas corpus relief." *Id.*; *See also Perez v. Rivard*, 2015 WL 3620426, at * 12 (E.D. Mich. June 9, 2015) (Battani, J.) (petitioner not entitled to habeas relief on claim that his sentencing guidelines scored in violation of *Alleyne*). Petitioner is not entitled to relief on his sentencing claim.

*Cummings*, 2017 WL 957688 at *3.

The Court finds the reasoning in *Cummings* persuasive. For the reasons stated in *Cummings*, petitioner is not entitled to federal habeas relief on his sentencing claim. Accordingly, petitioner's claim for relief should be denied.

  **E.**  **Petitioner denied a fair trial by ineffective assistance of counsel (Issue V).**

Petitioner makes four claims of ineffective assistance of trial counsel. The trial court addressed the claims as follows:

> Finally, Defendant argues his constitutional right to a fair trial were violated by ineffective assistance of counsel because the Trial Counsel failed to investigate the victim's medical condition; failed to ask for a continuance to investigate; failed to object to the prosecutor's improper arguments; failed to object at sentencing and argue for leniency; and failure of appellate counsel to raise these issues on appeal.

> This Court disagrees. The Michigan Supreme Court in *People v. Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994), articulated the standard for ineffective assistance: the defendant has the burden to prove that the counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

29

> There is no reasonable probability that, but for the Trial Counsel's errors, Defendant would not have been convicted or was so prejudiced by defense attorney's performance that Defendant did not receive a fair trial. *Strickland*, *supra* at 694 and *Pickens*, *supra* at 338.

*McCarty*, No. 00-76564-FC, slip op. at 5 (Opinion and Order) (June 22, 2005). This Court will address each claim below.

### 1.    Legal standard

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Id.* at 689-690. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather

"whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 2.    Trial counsel failed to investigate the condition of the victim.

Petitioner contends that on the second day of trial "the defense counsel became aware that [the victim] could communicate effectively enough for the prosecutor to determine that she knew about the trial proceedings and wanted to be present to exercising her statutory rights," but failed to request the court to conduct a hearing and make determinations as to her communicative skills despite her presence in the conference room." Petitioner's Brief (ECF No. 1-3, PageID.31). "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  Counsel's duty includes investigating all witnesses who may have information concerning his client's guilt or innocence. *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

Given the victim's medical history, her status as an incapacitated individual requiring a guardian, and her confinement to a nursing home, it is unclear to the Court as to why any defense counsel would call this severely disabled victim as a witness.  Nevertheless, assuming that counsel was ineffective for failing to perform a cursory investigation into the victim's condition, petitioner was not prejudiced by the lack of an investigation.  As discussed in § III.A and B, *supra*, the victim could not communicate effectively.  This had been known since the preliminary examination. Further investigation by petitioner's counsel would not have uncovered any information to

31

demonstrate that the victim was capable of testifying.  Accordingly, this claim of error should be denied.

### 3.    Trial counsel failed to object to the prosecutor's remarks.

As discussed, the prosecutor's remarks did not amount to prosecutorial misconduct. "Trial counsel is not required to raise meritless objections." *Kelly v. McKee*, 847 F.3d 316, 325 (6th Cir. 2017). "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999). *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial").  Accordingly, this claim of error should be denied.

### 4.    Trial counsel failed to object at sentencing.

The gist of petitioner's claim is that trial counsel's failure to object at sentencing "permitted the sentencing judge to engage in judicial factfinding and in expressing opinions allowing for a departure far in excess of the minimum sentencing guidelines that was not based upon objective and verifiable facts." Petitioner's Brief (ECF No. 1-3, PageID.35-36). "Counsel's failure to object to an error at sentencing or failure to raise a viable argument that would reduce his client's sentence may constitute deficient performance." *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012).  The record reflects that petitioner's counsel contested the scoring of the guidelines and argued for a lower sentence.  For the reasons discussed in § III.D., *supra*, petitioner's counsel had no basis to object to the alleged judicial factfinding under *Booker* and *Blakely*.  Counsel cannot be

ineffective for failing to raise meritless or futile objections. *See Coley*, 706 F.3d at 752; *Sanders*, 165 F.3d at 253.  Accordingly, this claim of error should be denied.

     **5.**     **Trial counsel failed to seek a continuance after learning that the victim knew about the trial and wanted to be present.**

The Court finds no prejudice in counsel's failure to seek a continuance to further investigate the victim's condition.  As previously discussed, the medical evidence established that the victim was in a vegetative state and could not communicate effectively.  Accordingly, this claim of error should be denied.

## IV.    Recommendation

For these reasons, I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  July 24, 2017          /s/ Ray Kent_____
                                      RAY KENT
                                      United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).